02 CV 36 JMR/FLN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 02-3934

| | | |
|---|---|---|
| Alane King, as Conservator and Natural Parent of Amber Lynn Schanus, | * | |
| Appellant, | * | |
| v. | * | Appeal from the United States District Court for the District of Minnesota. |
| Hartford Life and Accident Insurance Company, | * | |
| Appellee. | * | |

SCANNED
AUG 15 2005
U.S. DISTRICT COURT MPLS

Submitted: September 15, 2004
Filed: July 22, 2005

Before LOKEN, Chief Judge, LAY, BRIGHT, WOLLMAN, MORRIS SHEPPARD ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, and BENTON, Circuit Judges.

COLLOTON, Circuit Judge.*

This appeal involves the review of a decision by Hartford Life and Accident Insurance Company ("Hartford") to deny a claim for benefits under an employee

*Lay, Bright, Wollman, Murphy, Bye, Melloy, Smith, and Benton, Circuit Judges, join this opinion in its entirety. Riley, Circuit Judge, joins Parts II, III.A, and III.C of this opinion.

benefit plan governed by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. We reverse the decision of the district court granting summary judgment in favor of Hartford, and remand the case to the district court with directions that it be returned to the administrator for further consideration.

I.

Hartford issued a group insurance policy to Prairie Island Indian Community d/b/a Treasure Island Resort and Casino in Minnesota. As part of its employee benefit plan, Treasure Island provided its employees with life insurance benefits and accidental death benefits under the Hartford policy. Martin Schanus, an employee of Treasure Island, died in a motorcycle crash in June 2000, and this dispute involves whether his designated beneficiary is entitled to an accidental death benefit. The beneficiary is Schanus's daughter, Amber Lynn Schanus, and this action was brought by her mother, Alane King, as conservator for Amber Lynn.

Schanus was killed after the motorcycle he was operating veered off a road and struck a fence. Schanus was ejected from the motorcycle and suffered fatal head injuries. Blood tests taken after the accident showed that Schanus was legally intoxicated at the time of the crash (with a blood-alcohol level of 0.19), and his death certificate listed "acute alcohol intoxication" as a significant condition contributing to death.

Hartford denied a claim for an accidental death benefit, which would have doubled the life insurance benefit paid to Amber Lynn, on the ground that Schanus's death was not the result of an "accidental bodily injury" within the meaning of the policy. Alternatively, Hartford asserted that the claim fell within a policy exclusion for losses caused by an "intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane." King then brought an action in Minnesota state district court, alleging that Hartford's denial of the accidental death benefit was "arbitrary,

capricious, and not a fair or logical reading of the policy language." Hartford removed the action to the United States District Court for the District of Minnesota because the claim arises under ERISA. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987).

In the district court, despite the general rule that a challenge to the decision of a benefits administrator under ERISA should be decided based on the evidence presented to the administrator, *see, e.g.*, *Short v. Central States, Southeast and Southwest Areas Pension Fund*, 729 F.2d 567, 571 (8th Cir. 1984), King presented new evidence in support of the claim for benefits, and Hartford did not object to this unusual procedure.[1] With the record so developed, the parties agreed that the facts were undisputed and filed cross-motions for summary judgment.

Hartford defended its decision that Schanus's death did not result from an "accidental bodily injury" by invoking the definition of "accident" set forth in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990). The *Wickman* decision excluded from the scope of "accident" those cases in which "a reasonable person . . . would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* at 1088. Applying *Wickman*, the district court concluded that "neither Hartford's definition of its plan terms nor its application of those terms to the facts can be considered either arbitrary or capricious," (Hr'g Tr. at 23), and it granted summary judgment in favor of Hartford. The court, however, expressed "no hesitation whatsoever in indicating that this is an extraordinarily hard rule of law," and remarked that "[i]t would be very pleasing to this court were the court of appeals to take a very careful look at this." (*Id.* at 26).

---

[1]Hartford did object to two exhibits proffered by King, but did not complain about the introduction of statistical evidence concerning the frequency of injuries and deaths from drunk driving. *See* Reply Mem. in Supp. of Def.'s Mot. for Summ. J. (R. Doc. 14 at 2).

On appeal, a panel of this court reversed the grant of summary judgment in favor of Hartford and remanded the case for further proceedings. *King v. Hartford Life and Accident Ins. Co.*, 357 F.3d 840 (8th Cir. 2004). The panel adopted the opinion in *Wickman* as the applicable test for determining whether Schanus died as a result of accidental bodily injury, and then evaluated whether Schanus's death was "highly likely to occur" as a result of his drunk driving. Relying on statistical evidence that drunk driving deaths constitute less than one percent of the number of people arrested for drunk driving, the panel concluded that such "long-shot chances" of death by drunk driving failed to satisfy the *Wickman* test. *Id.* at 844. We subsequently granted rehearing en banc and vacated the panel's opinion.

Having considered the matter en banc, we now reverse the grant of summary judgment in favor of Hartford, but we do so on a narrower ground than that articulated by the panel. For the reasons detailed below, we conclude that Hartford's litigating position concerning the proper interpretation of "accidental bodily injury" is fundamentally inconsistent with its stated basis for denying the claim in 2001 during the administrative process. Under these circumstances, we hold that the administrator's decision cannot be sustained, and the appropriate remedy is to remand the case to the district court, with directions to return the case to the administrator for application of the standard that Hartford now says should govern the claim.

II.

Several basic principles govern our review of challenges to the decision of an plan administrator to deny a claim for benefits under a plan governed by ERISA. Congress enacted the statute with "expectations that a federal common law of rights and obligations under ERISA-regulated plans would develop." *Pilot Life v. Dedeaux*, 481 U.S. 41, 56 (1987). As distinguished from the "brooding omnipresence in the sky" that was federal common law prior to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), *see Southern Pac. R. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J.,

dissenting), Congress intended as a matter of positive law under ERISA that "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Franchise Tax Bd. v. Const. Laborers Vacation Trust*, 463 U.S. 1, 24 n.26 (1983) (quoting 120 Cong. Rec. 29,942 (1974) (remarks of Sen. Javits)).

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Supreme Court took a major step in developing this "federal common law" of ERISA by explaining the appropriate standard of review for actions brought under 29 U.S.C. § 1132(a) to recover benefits allegedly due to a participant or beneficiary under an ERISA-regulated plan. The Court in *Bruch* concluded that principles of trust law should guide the determination of a standard of review. Under these established principles, unless a benefit plan gives the plan administrator power to construe disputed or doubtful terms, or provides that eligibility determinations are to be given deference, judicial review of the administrator's decision is de novo. *Id.* at 115. In such a case, a federal court may apply other aspects of the federal common law developed under ERISA to construe disputed terms in a plan, *e.g.*, *Brewer v. Lincoln National Life Insurance Co.*, 921 F.2d 150, 153-54 (8th Cir. 1990), and, if there is good cause to do so, the court may allow parties to introduce evidence beyond the materials presented to the administrator. *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993); *Weber v. St. Louis Univ.*, 6 F.3d 558, 560-61 (8th Cir. 1993).

Where a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations, however, the landscape is much different. In those circumstances, the administrator's decision is reviewed only for "abuse . . . of his discretion," *Bruch*, 489 U.S. at 111 (quoting Restatement (Second) of Trusts § 187 (1959)), and the administrator's interpretation of uncertain terms in a plan "will not be disturbed if reasonable." *Id.* In an effort to give content to the requirement of "reasonable" interpretation by plan administrators, our court has catalogued several factors to be considered in the analysis. These include "whether their interpretation

is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan." *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992) (citing *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989)). These so-called "*Finley* factors" inform our analysis, but "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own – and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." *De Nobel*, 885 F.2d at 1188 (alteration in original) (internal quotes omitted). Thus, while a court may develop the "federal common law" of ERISA to interpret a benefit plan in a case governed by *de novo* review, an administrator with discretion under a plan to construe uncertain terms is not bound by this same interpretation, so long as the administrator adopts an interpretation that is "reasonable." *Cf. National Cable and Television Ass'n v. Brand X Internet Serv.*, 2005 WL 1498860, at *12 (U.S. June 27, 2005) (holding that *de novo* interpretation of ambiguous statute by court of appeals does not preclude administrative agency from adopting a different "reasonable" interpretation under the doctrine of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

Review for abuse of discretion also ensures that an administrator's decision is supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Donaho v. FMC Corp.*, 74 F.3d 894, 900 & n.10 (8th Cir. 1996) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)), *abrogated on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court "must focus on the evidence available to the plan administrators at the time of their decision and may

not admit new evidence or consider *post hoc* rationales." *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999). Because ERISA requires employee benefit plans to "provide adequate notice" to any participant or beneficiary whose claim is denied, "setting forth the specific reasons for such denial" in a manner "calculated to be understood by the participant," 29 U.S.C. § 1133, we have held that plan trustees must "briefly state the facts of the case and the rationale for their decision," *Brumm v. Bert Bell NFL Retirement Plan*, 995 F.2d 1433, 1436 (8th Cir. 1993) (internal quotation omitted), and we have refused to allow claimants "to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998); *see also Short*, 729 F.2d at 575. In sum, an administrator with discretion under a benefit plan must articulate its reasons for denying benefits when it notifies the participant or beneficiary of an adverse decision, and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator.

III.

A.

The benefit plan at issue in this case gives discretion to the administrator. A general provision of the group life insurance policy, in explaining who interprets terms and conditions in the policy, states that "[w]e have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Appellant's App. at 58) (hereinafter "App."). The administrator's decisions, therefore, are subject to review for abuse of discretion under the *Bruch* framework. Our court, of course, reviews de novo the district court's decision to grant summary judgment.

In describing the accidental death benefit sought by Amber Lynn Schanus, the policy explains that:

> The Hartford will pay [the accidental death benefit] if [the participant] suffer[s] *accidental bodily injury* while [his] insurance is in force and:
>
> (1) a Loss results directly from such injury, independent of all other causes; and
>
> (2) such a Loss occurs within 90 days after the date of the accident causing the injury.

(App. at 56) (emphasis added). The plan does not define the term "accidental." It then provides a list of exclusions for accidental death benefits, including that "[n]o benefit will be paid for a loss caused or contributed to by . . . (6) any intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane." (App. at 57).[2]

After Martin Schanus's death, King presented proof of death and the necessary claim forms to Hartford. On December 26, 2000, Hartford awarded a death benefit of $42,916.04 to Amber Lynn, but denied her claim for an accidental death benefit. Hartford's initial denial letter stated that:

> The information reviewed including the toxicology findings demonstrates that by driving while intoxicated, Mr. Schanus voluntarily exposed himself to an unnecessary danger which resulted in a fatal self

---

[2]The other exclusions are (1) sickness, (2) disease, (3) any medical treatment for sickness or disease, (4) any infection, except a pus-forming infection of an accidental cut or wound; (5) war or any act of war, whether war is declared or not, and (7) taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered to you by a licensed physician.

> inflicted injury. The Black's Law Dictionary, Sixth Edition, West Publishing Company, 1990, defines Accidental as:
>
> > "Happening by chance, or unexpectedly; taking place not according to usual course of things; casual; fortuitous."
>
> Given his blood alcohol level, his bodily injury can in no way be considered unexpected, happening by chance or fortuitous. On the contrary, it could be expected that if he drove his vehicle in such a reckless manner and in an intoxicated condition, serious bodily injury could result. As such, we have concluded that the insured did not suffer an accidental bodily injury within the meaning of the policy.
>
> Since it could be expected that if Mr. Schanus operated his vehicle under these conditions that a serious bodily injury would occur and that he voluntarily caused these conditions to exist, we have also concluded that Mr. Schanus' death was caused or contributed to by a self-inflicted injury. Since his death was caused or contributed to by an injury specifically excluded from coverage, no Group Accidental Death benefits are payable.

(App. at 86-87).

According to the plan, a beneficiary whose claim is denied initially may "appeal to the Insurance Company for a full and fair review." (App. 67). Hartford then will respond with "a written decision" that "will include specific reasons for the decision and specific references to the plan provision on which the decision is based." (*Id.*) King appealed Hartford's initial denial of an accidental death benefit in a letter dated February 21, 2001, arguing that Hartford's denial was "unreasonable and not supported by the evidence." (App. at 90).

On June 14, 2001, Hartford responded with a decision letter denying King's appeal and concluding that Schanus's death "was not an accident." (App. at 91). In this written decision, Hartford explained that its letter dated December 26, 2000, (*i.e.*,

the initial denial letter) "lists the evidence contained in [Schanus's] claim file," and informed King that "[o]ur decision to uphold the denial of his claim for benefits is based upon that evidence and your letter dated 2/21/01." (*Id.*)

In explaining its rationale for concluding that Schanus did not suffer "accidental bodily injury" that would trigger the accidental death benefit, Hartford wrote that "a reasonable person would have known that death or serious injury was a reasonably foreseeable result of driving while intoxicated." (App. at 92). The decision further opined that "[a] death is not accidental when it is a foreseeable result of the insured's voluntary act of becoming intoxicated," and concluded that Schanus's death "was not an accident." (*Id.*)

Hartford's decision cited, as "case law supporting this defense," the opinion in *Weisenhorn v. Transamerica Occidental Life Insurance Co.*, 769 F. Supp. 302 (D. Minn. 1991), which held that an insured who was killed in a drunk driving accident could not recover an accidental death benefit where the policy said no benefits would be paid if loss "results from" the insured's "commission of . . . [a] felony." *Id.* at 304. The court in *Weisenhorn* reasoned that the insured's felonious drunk driving had caused the fatal accident and that "being killed while committing felonious drunk driving is a foreseeable risk." *Id.* at 306. The Hartford decision also cited as "supporting" authority the case of *Brewer v. Lincoln National Life Insurance Co.*, 921 F.2d 150, 153-54 (8th Cir. 1990), which held that an insurer properly denied health insurance coverage under an exclusion for "mental illness." The June 2001 decision did not incorporate or otherwise mention the reasoning of Hartford's initial denial letter from December 2000, and it did not refer to the First Circuit's decision in *Wickman* defining the term "accidental." Finally, Hartford's decision letter in June 2001 stated that "[i]n some circuits the self-inflicted injury exclusion is also a recognized defense," and "we assert it as a defense in this case as well." (App. at 92).

B.

As explained above, where a benefit plan gives the administrator discretion to interpret uncertain terms in the plan, we typically begin our analysis by considering whether the administrator's interpretation of the terms is "reasonable." In its final decision on Amber Lynn's claim, Hartford said that Martin Schanus did not suffer "accidental bodily injury," triggering the accidental death benefit, because "a reasonable person would have known that death or serious injury was a reasonably foreseeable result of driving while intoxicated," and "[a] death is not accidental when it is a foreseeable result of the insured's voluntary act of becoming intoxicated." (App. at 92). Our normal approach, therefore, would be to consider whether it is "reasonable" to construe the term "accidental" to exclude injuries and deaths that are a "reasonably foreseeable" result of the insured's conduct.

This inquiry would present a debatable question. Some courts have accepted as reasonable an interpretation that excludes "reasonably foreseeable" injuries from the scope of "accidental" injuries, *e.g.*, *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998), and these decisions lend support to Hartford's decision. If "accidental" means "unexpected," and if "reasonably foreseeable" is a reasonable synonym for "expected," then one might well conclude that the proffered standard passes muster under the deferential ERISA standard of review. On the other hand, a "reasonably foreseeable" standard is quite broad; if all "reasonably foreseeable" injuries are excluded from coverage, then the definition of accident may frustrate the legitimate expectations of plan participants, for insurance presumably is acquired to protect against injuries that are in some sense foreseeable. If Hartford's definition of "accidental bodily injury" were so narrow that it could eliminate many injuries that an average plan participant would expect to be covered based on the plain language of the plan, then there would be a question whether it conflicts with the statutory requirement that a plan be "written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a).

We find it unnecessary and inappropriate to reach the issue in this case, because Hartford has not defended its denial of Amber Lynn's claim for an accidental death benefit on the ground that Martin Schanus's death was "reasonably foreseeable." Rather, Hartford consistently has maintained in litigation that the proper definition of "accidental" in its policy is that set forth in the First Circuit's decision in *Wickman*, which held that there is no accident if "a reasonable person, with background and characteristics similar to the insured, would have viewed the injury *as highly likely to occur* as a result of the insured's intentional conduct." 908 F.2d at 1088 (emphasis added). Hartford argues that this *Wickman* standard is "a direct descendant" of our court's decision in *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052 (8th Cir. 1979), (Br. of Appellee at 10), which "reject[ed] the argument that a result is expected as that term is used in insurance policies simply because it was *reasonably foreseeable*," and held that there was no "accident" under a general liability insurance policy only "[i]f the insured knew or should have known that there was a *substantial probability* that certain results would follow his acts or omissions." *Id.* at 1058-59 (emphases added). *Carter Lake* specifically distinguished between standards of "reasonably foreseeable" and "substantial probability," stating that the latter requires not only that a reasonably prudent person would be alerted to the possibility of results occurring, but that such a reasonable person would be forewarned that the results are "highly likely to occur." *Id.* at 1059 n.4; *see also Wickman*, 908 F.2d at 1088 (citing *Carter Lake*).[3]

[3]The dissent insists that the *Wickman* court did not adopt a specific definition of accidental injury that calls for an evaluation whether a reasonable person would have viewed the injury as highly likely to occur, and that Hartford did not endorse such a definition in this litigation. *Post* at 28. We think the dissent's reading is impossible to square with Hartford's quotation of *Wickman*'s statement that in the objective analysis of the insured's expectations, one must ask whether "a reasonable person, with background and characteristic similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct," 908 F.2d at 1088, Hartford's observation that the First Circuit decided *Wickman* by "applying this test," and Hartford's assertion that "the *Wickman* test" is the proper

Hartford argues that its litigating position is not inconsistent with the rationale for its decision on Amber Lynn's claim, because although the decision denying the her administrative appeal applied a "reasonably foreseeable" standard, the initial denial letter cited *Black's Law Dictionary*, which defined "accidental" as "happening unexpectedly." Hartford asserts that if the final decision and the initial denial letter are read together, they show that Hartford applied the *Wickman* standard during the administrative process.

We disagree with Hartford's interpretation of the administrative decision. The decision on Amber Lynn's appeal clearly applied a "reasonably foreseeable" standard. The decision letter cited two court decisions as "case law supporting" its rationale; it did not cite *Wickman*, and neither cited case applied the *Wickman* rationale. The initial denial letter, which Hartford suggests we should consider as further explanation of its rationale, does not state that the administrator applied the *Wickman* rationale and a standard of "substantial probability" or "highly likely to occur" in denying the claim. The initial denial, invoking *Black's Law Dictionary*, merely concluded that Schanus's death "could be expected," which begs the question whether "expected" means "reasonably foreseeable" or "highly likely." Hartford

method of analysis in this case. (Br. of Appellee at 9-10).

Nor do we agree that the *Wickman* court's analysis is "devoid of any discussion about whether a reasonable person in Mr. Wickman's shoes would have viewed death as 'substantially' or 'highly' likely to occur." *Post* at 28. The heart of the First Circuit's analysis noted the magistrate judge's conclusion that Wickman should have known that death was "substantially likely to occur," observed that "'substantially likely to occur' is an equivalent, if not tougher, standard to 'highly likely to occur,'" and thus concluded that the magistrate "applied an acceptable legal standard." *Id.* at 1089. Hartford itself defined the "second prong of the *Wickman* test" to mean "whether a reasonable person would view the injury as 'highly likely to occur,'" and then urged this court to reject what Hartford characterized as a "strained interpretation" of "highly likely to occur" adopted in *West v. Aetna Life Ins. Co.*, 171 F. Supp.2d 856 (N.D. Iowa 2001). (Br. of Appellee at 30).

acknowledges that the *Wickman* court itself thought the term "unexpected" left "some ambiguity with respect to the 'level of expectation . . . necessary for an act to constitute an accident,'" (Br. of Appellee at 15-16 (quoting *Wickman*, 908 F.2d at 1085)), and *Wickman* described "accident" and "unexpected" as "equally ambiguous terms." 908 F.2d at 1087. Thus, accepting Hartford's invitation to read the two letters together, the final decision makes clear that Hartford applied a standard that excluded from the definition of "accidental" an injury or death that was "reasonably foreseeable," even if a reasonable person would not have viewed it as "highly likely to occur."

We thus conclude that this case falls in the category where an administrator offers a *post hoc* rationale during litigation to justify a decision reached on different grounds during the administrative process. Even assuming it is reasonable to interpret the term "accidental" to exclude "reasonably foreseeable" injuries, Hartford does not defend the administrator's decision on that basis. We will not uphold Hartford's decision on a ground that is fundamentally inconsistent with its emphatic position that *Wickman* sets forth the proper interpretation of the term "accidental" in the Hartford insurance policy, and its assertions that "applying *Wickman* here contributes to national uniformity and predictability of results, which in the future will promote early resolution of similar disputes." (Br. of Appellee at 11).

Whether a reasonable person would have viewed Schanus's injuries and death as "highly likely to occur," *Wickman*, 908 F.2d at 1088, was not part of the administrator's stated rationale for denying Amber Lynn's claim. We do not know, for example, whether the administrator interprets "highly likely" as used in *Wickman* to mean "more likely than not," some lesser probability that exceeds "reasonably foreseeable" but falls short of a fifty-percent chance, *cf. Carter Lake*, 604 F.2d at 1059 n.4 (equating "substantial probability" with "highly likely to occur"), or something else that does not depend at all on statistical probabilities. And the administrator did not discuss whether evidence concerning how a reasonable person

would view the likelihood of Schanus's death was sufficient to satisfy the *Wickman* standard, however that might be precisely defined by Hartford. Without a stated rationale from the administrator applying what Hartford now says is the correct legal standard, we cannot determine whether a proffered interpretation of "accidental" is reasonable, or whether there is substantial evidence to support a denial of benefits under such an interpretation.

C.

Hartford argues alternatively that we should affirm on a ground not relied upon by the district court, namely, that Martin Schanus's injuries and death are ineligible for coverage under a specific policy exclusion. It invokes an exclusion providing that "[n]o benefit will be paid for a loss caused or contributed to by . . . (6) any intentionally self-inflicted injury, suicide, or attempted suicide, whether sane or insane." (App. at 57). Hartford admits that Schanus did not intend to injure himself by driving his motorcycle on the night of his death, but claims that Schanus's alcohol intoxication was itself an "intentionally self-inflicted injury" that "contributed to" his injuries and death.

We reject this alternative argument because it is based on an unreasonable interpretation of the plan, and because it represents another effort to uphold the administrator's decision with a *post hoc* rationale not expressed when benefits were denied. The most natural reading of the exclusion for injuries contributed to by "intentionally self-inflicted injury, suicide, or attempted suicide" does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication. The Seventh Circuit seemed to think this self-evident when it explained in a case involving death by drunk driving that the plan at issue "does not specifically exclude from coverage the conduct at issue *but does exclude other conduct* – notably suicide, attempted suicide and *purposefully self-inflicted injury*." *Cozzie*, 140 F.3d at 1111 (emphases added). One rarely thinks of a drunk driver who

arrives home safely as an "injured" party, and to define drinking to the point of intoxication as an "intentionally self-inflicted injury, suicide, or attempted suicide" is at least a "startling construction." *See Brumm*, 995 F.2d at 1440.

But even if Hartford's reading of "intentionally self-inflicted injury" might be a reasonable interpretation of the language standing alone, *cf. Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1013 (W.D. Mich. 1997), it is not reasonable in the context of this policy, because it renders meaningless other important policy language. *See Finley*, 957 F.2d at 621. The very next exclusion in Hartford's policy states that no benefit will be paid for a loss caused or contributed to by "(7) taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered to you by a licensed physician." (App. at 57). If the exclusion for "intentionally self-inflicted injury" eliminated coverage for unintended injuries caused or contributed to by intentionally ingesting substances into the body, then there would be no reason for the seventh exclusion regarding the taking of drugs and narcotics. Hartford's interpretation would render the latter exclusion meaningless, and we think it is therefore unreasonable.

In any event, Hartford's current position concerning the exclusion for "intentionally self-inflicted injury" is another *post hoc* rationale that differs from the stated basis for denying benefits. The decision on Amber Lynn's appeal mentioned the self-inflicted injury exclusion almost as an afterthought, and did not provide any reasoning. (App. at 92). The initial denial letter, which Hartford says we should consider to understand its reasoning, explained that "[t]he information reviewed including the toxicology findings demonstrates that by driving while intoxicated, Mr. Schanus voluntarily exposed himself to an unnecessary danger *which resulted in a fatal self inflicted injury*." (App. 86) (emphasis added). This rationale is inconsistent with Hartford's current position that alcohol intoxication was the "intentionally self-inflicted injury." Schanus's alcohol intoxication was not a *fatal* self-inflicted injury; it is evident that when Hartford denied the claim, it was referring to Schanus's head

injury as the "self-inflicted injury," because the head injury – not the drinking – was "fatal." Accordingly, we reject Hartford's argument that we should affirm the district court's grant of summary judgment on the alternative ground that Schanus's alcohol intoxication was an "intentionally self-inflicted injury" that contributed to his death.

D.

The question remains how to resolve this appeal. We think the posture of this case is comparable to those in which the administrator of an ERISA-regulated plan denies a claim for benefits based on an unreasonable interpretation of terms in the plan. Here, by asserting that the *Wickman* test of "highly likely to occur," rather than a "reasonably foreseeable" standard, should govern whether Amber Lynn is entitled to "accidental death benefits" under the plan, Hartford effectively concedes that it applied the wrong definition of "accidental" in denying the claim.

Under these circumstances, we believe the proper remedy is to return the case to the administrator for reevaluation of the claim under what Hartford says is the correct standard. The statute affords the courts a range of remedial powers under ERISA, 29 U.S.C. § 1132(a), and returning the case to a plan administrator for further consideration is often appropriate. *E.g.*, *Shelton v. Contigroup Companies, Inc.*, 285 F.3d 640, 644 (8th Cir. 2002); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073-74 (2d Cir. 1995). In particular, when an administrator abandons in litigation its original basis for denying benefits, the better course generally is to return the case to the administrator, rather than to conduct *de novo* review under a plan interpretation offered for the first time in litigation. *See Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 392, 398 & n.11 (5th Cir. 1998). For "[i]t is not the court's function *ab initio* to apply the correct standard to [the participant's] claim. That function, under the Plan, is reserved to the Plan administrator." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term*

*Disability Income Plan*, 85 F.3d 455, 461 (9th Cir. 1996) (internal quotation omitted); *see also Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 665 (6th Cir. 2004) (remanding to district court for return to administrator after concluding that administrator applied impermissible definition of "accident" in denying benefits). In this case, a return to the administrator has the additional salutary effect of permitting the administrator to consider in the first instance evidence received by the district court, but not presented to the administrator, concerning whether a reasonable person would have viewed Schanus's injuries and death as "highly likely to occur" as a result of his operating a motorcycle while intoxicated.[4]

---

[4]The dissent urges that even when a plan administrator abandons in litigation its stated basis for denying benefits, the court should nonetheless consider whether the abandoned rationale provides a sufficient basis to reject the beneficiary's claim. *Post* at 29. We think the better course in our adversarial system is for the court to limit its consideration to grounds actually advanced before the court. If Hartford does not wish to defend the interpretation that an injury is not "accidental" simply because it is "reasonably foreseeable," then it is not our place to press that position for the insurer. We suspect, moreover, that the claimant in this case will feel less "sandbagged," *post* at 29, if she has an opportunity for consideration of her claim at the administrative level under the standard that Hartford now says should apply, than if her claim is rejected by this court on a basis not even urged by Hartford in its briefs on appeal.

Of course, if a plan administrator attempts to gain a tactical advantage by proffering a new plan interpretation for the first time in litigation, then we are "free to ignore" it, *Marolt*, 146 F.3d at 620, and we need not always return a case to an administrator where a new interpretation is offered in litigation. *See Schadler*, 147 F.3d at 398 n.11 (disclaiming any such "steadfast rule"). Here, however, Hartford has declined to maintain its original, narrower interpretation of "accidental injury," and we see no potential for abuse in permitting the administrator to consider in the first instance how *Wickman*'s more generous interpretation of accidental injury, which Hartford now embraces, should be applied in this case.

* * *

For the foregoing reasons, we reverse the judgment of the district court granting summary judgment in favor of Hartford, and remand the case with instructions to return the claim to the administrator for reevaluation of Amber Lynn's claim for accidental benefits under the *Wickman* standard that Hartford asserts should be applied.

BRIGHT, Circuit Judge, with whom LAY and BYE, Circuit Judges, join, concurring.

I join in Judge Colloton's excellent opinion in this case. I write separately to comment on the remand. However, the dissenting opinion discusses an issue that Judge Colloton's opinion for the Court does not reach – the reasonableness of the plan administrator's definition of "accident." While discussion of this issue is unnecessary, see slip op. at 11, I write separately also to contribute some observations to the dissenting opinion's partial discussion of that issue.

**I.**

I write separately, first, to explain why Hartford, a nationally known and highly-regarded insurer, should be given an opportunity to correct its previous faulty administrative decision denying the claim of Amber Lynn Schanus, a minor child, for accidental death benefits in the sum of $42,000 plus interest resulting from the death of her father, an employee-insured under the Hartford policy. In the panel opinion, Judge Murphy and Judge Lay joined me in an outright reversal, ruling that Schanus's claim should be paid. King ex rel. Schanus v. Hartford Life & Accident Ins. Co., 357 F.3d 840 (8th Cir. 2004), vacated by order granting reh'g en banc.

As Judge Colloton's opinion observes, the record before the plan administrator did not contain the statistical evidence presented in the district court relating to the

frequency of injuries and deaths from drunk driving. Slip op. at 3. That evidence shows that drunk driving deaths constitute less than one percent of the number of people arrested for drunk driving. Id. at 844.

Apart from Hartford's litigation position, Hartford is obligated to be fair and reasonable to itself and to claimants in ruling whether a policy should be paid. With the review, the plan administrator will have all the facts and can apply the standard that in litigation it has acknowledged to be correct — Whether a reasonable person, with background and characteristics similar to the insured, would have viewed Schanus's injuries and death as highly likely to occur as a result of Schanus's conduct. See Wickman v. N.W. Nat'l Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990).

I am quite sure that Hartford has spent considerably more to defend its denial of Schanus's claim than it would have cost to pay the claim itself. It is time now to reasonably and properly conclude Schanus's claim on all the facts and the correct law.[5] On remand, the plan administrator can do just that.

**II.**

According to the plan administrator's definition of "accident," an injury is not an accident if it was reasonably foreseeable.[6] The dissenting opinion discusses the

---

[5] Because Hartford has adopted the Wickman definition of "accident," the administrator must consider the background and characteristics of the decedent. See Wickman, 908 F.2d at 1088.

[6] The key phrases in Hartford's denial letters were that Schanus's injuries "could [have been] expected" or were "[not] unexpected" or were "foreseeable" or "reasonably foreseeable." The "reasonably foreseeable" language came in Hartford's second denial letter, amplifying and justifying the standard it used to define "accident."

As Judge Colloton's opinion for the Court notes, in litigation Hartford has

reasonableness of this definition – an issue that the opinion for the Court does not and need not reach. In its partial discussion, the dissenting opinion does not consider the startling implications of this definition. I wish to contribute here only a few initial observations.

Anytime we review a plan administrator's definition of a term, we review more than a denial of claims in a single insurance case – a case, for instance, involving a drunk driver. We are reviewing a definition that the plan administrator would be free – if we affirmed it – to apply in all cases, even those involving, for instance, sober drivers.

---

argued that the plan administrator used the federal common law definition of "accident," developed in Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077 (1st Cir. 1990), and subsequent cases. The federal common law definition of "accident" is: An injury that the victim reasonably expected to escape or (where the victim's subjective expectations cannot be determined) an injury that a reasonable person with background and characteristics similar to those of the victim would not have considered "highly likely." See id., at 1088-89. An unexpected injury is an accident unless it would be objectively unreasonable for the victim to expect to escape the injury. See id. See also Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1456 (5th Cir. 1995) (Justice Byron White, ret.) (decedent's death was an accident because decedent's expectation of survival was objectively reasonable; expectation is objectively reasonable if death was not "substantially certain"); Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 264 (2nd Cir. 2004); Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1126-27 (9th Cir. 2002); Santaella v. Metro. Life Ins. Co., 123 F.3d 456, 463 (7th Cir. 1997).

In litigation, Hartford did not deny that the plan administrator defined "accident" to exclude reasonably foreseeable injuries. Hartford simply argued that "highly likely" and "reasonably foreseeable" are the same thing. Obviously they are not. The highly-likely standard not only creates a far more inclusive definition of "accident," but also requires more care and consideration in assessing likelihoods. The reasonably-foreseeable standard, by contrast, not only could define away most accidents resulting from the victim's imprudence or negligence, but also provides an easy way for an insurance company to deny just claims relating to accidents.

The gulf between the common law definition and the plan administrator's definition here is telling. The two definitions are at opposite poles. The common law definition asks whether the victim could reasonably have expected to *escape* the injury. See n.1, supra. The plan administrator's definition here asks whether the victim could reasonably have expected to *suffer* the injury. As Justice White noted, one can reasonably expect to *escape* injury so long as the injury is not "substantially certain." See Todd, 47 F.3d at 1456. On the other hand, a slim chance of an injury – mere foreseeability – is enough to say one "could expect" to *suffer* an injury. If the common law definition, developed through many cases in several courts, is reasonable, one would not expect a reasonable discretionary definition by a plan administrator to be separated by so vast a chasm from the common law definition.

Let us briefly examine the possible results of the plan administrator's definition, which could exclude from "accident" coverage all deaths or injuries that were reasonably foreseeable. When a woman stands on a shaky stool to reach for a bottle of baby formula on the top shelf of the cupboard, it is reasonably foreseeable that she will fall and, in crashing to the kitchen counter and then to the floor, break her neck. Under the plan administrator's definition, the woman's injury is not an accident. When a lineman working atop an electricity pole relies on his partner to have cut the power, instead of checking it himself, it is reasonably foreseeable that he will be electrocuted. Under the plan administrator's definition, the lineman's injury would be ruled a non-accident. When a man speeds his pregnant wife to the hospital, breaking the speed limit, it is reasonably foreseeable that he will crash the car and injure the passengers. Applying a reasonably-foreseeable standard, the plan administrator could rule the injuries not accidental.

As the Wickman court noted, people buy accident insurance to protect themselves against their own negligence – that is, voluntary but imprudent conduct that may with reasonable foreseeability result in injuries or even death. See 908 F.2d at 1088.

By excluding from accident coverage any injury that was reasonably foreseeable, the plan administrator's decision would seem to make nonsense of the concept of an "accident." It would seem to reduce "accident insurance" to insurance only for strange, unforeseeable injuries (e.g., choking to death on a piece of meat) or for injuries in which the victim was passive rather than active (being struck by lightning or being run down by a reckless driver while crossing the street). Such a construction of the terms of an insurance plan would turn the insurance policy into a trap for the unwary. It would deceive employees – attracting them to a job with the promise of benefits that turn out, when they are claimed, to be illusory. Such interpretations of plan language by a plan administrator constitute an abuse of discretion – under the third Finley factor, namely, that a decision may not violate the substantive or procedural requirements of ERISA (by, for instance, misleading plan participants).[7] See Lutheran Med. Ctr. v. Contractors Health Plan, 25 F.3d 616, 621 (8th Cir. 1994); Brumm v. Bert Bell NFL Ret. Plan, 995 F.2d 1433, 1439-40 (8th Cir.

---

[7]Hartford cites one published case and one unpublished case in which courts permitted a plan administrator's use of a "reasonably foreseeable" standard in defining "accident." These cases from other circuits apply a different and less searching reasonableness review than we apply under Finley.

The Seventh Circuit in Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104 (7th Cir. 1998) applied a standard for "reasonableness" review that required only that the plan administrator's decision be rational, or make "a rational connection" between "the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." See id. at 1108-09. The Cozzie court merely noted that the plan administrator had taken a position that had also been taken by certain district courts, and that was enough for the court to conclude that the administrator's decision was not irrational or "downright unreasonable." See id. at 1109-11. This relaxed sort of reasonableness review is not available under Finley.

In Cates v. Metropolitan Life Ins. Co., 149 F.3d 1182 (Mem.), 1998 WL 385897 (6th Cir. 1998), an unpublished opinion not binding within the Sixth Circuit, the court applied a similar rational-decision review for reasonableness that is at odds with Finley. See id. at *2-3.

Our reasonableness review, announced in Finley, would not permit the decisions and dicta stated in these cases and relied on by Hartford.

1993). Such a definition also runs afoul of the first Finley factor: It is not consistent with the goals of an accident insurance plan to deny coverage for all accidents other than those in which the victim was passive or which did result from the victim's own actions but were so bizarre as to be unforeseeable.

One might think that the plan administrator would not apply the "reasonably foreseeable" standard in cases such as those I have listed, but would apply it only in drunk driving cases or in autoerotic self-asphyxiation cases (the sorts of cases Hartford focuses on in its briefs). But our law is clear that we cannot allow a definition on the basis that a plan administrator will apply it in some cases but not others, at his/her pleasure. Such inconsistent application itself constitutes an abuse of discretion (the fourth Finley factor). If we permit a definition in one case, we must expect it to be applied consistently, in all cases.

Again, the opinion for the Court does not, and need not, reach the issue of whether the plan administrator's reasoning was reasonable or was an abuse of discretion. See slip op., supra, at 11.

GRUENDER, Circuit Judge, with whom LOKEN, Chief Judge, and MORRIS SHEPPARD ARNOLD and RILEY, Circuit Judges, join, dissenting.

Because I conclude that the district court did not err in granting summary judgment in favor of Hartford, I respectfully dissent.

As I analyze it, this case presents one relatively straightforward issue: Whether the Hartford plan administrator abused its discretion when it denied Amber Lynn Schanus's claim for accidental-death benefits on the basis that her father, Martin Schanus, did not die from an "accidental bodily injury" under the terms of the Hartford insurance policy when he crashed his motorcycle while driving with a blood-alcohol level of 0.19 g/dl–nearly twice the legal limit.

Our prior decisions provide a workable framework for reviewing decisions of ERISA plan administrators for abuse of discretion. I see no reason to deviate from those decisions in this case. Using our well-established framework, I would conclude that the Hartford plan administrator did not abuse its discretion in denying Amber Lynn's claim. However, before analyzing the plan administrator's decision, I will explain where I think the Court's opinion goes astray and how the Court's decision ultimately deviates from our normal treatment of ERISA abuse-of-discretion cases.

In my view, the Court has confused the issue in this case with its conclusion that, "by asserting that the *Wickman* test of 'highly likely to occur,' rather than a 'reasonably foreseeable' standard, should govern whether Amber Lynn is entitled to 'accidental death benefits' under the plan, Hartford effectively concedes that it applied the wrong definition of 'accidental' in denying the claim." First, the Court misreads the test set forth in *Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077 (1st Cir. 1990). Second, the Court reads too much into Hartford's reliance on *Wickman* during litigation of this case.

The facts of *Wickman* are simple and few. Paul Wickman was last seen standing on the outside of the guardrail of a highway bridge and holding on to the guardrail with only his right hand. He fell to his death from the bridge to railroad tracks forty or fifty feet below. His widow, Mrs. Wickman, submitted a claim for benefits under an ERISA-governed, accidental-death insurance policy sponsored by her husband's employer. Noting that the policy defined accident as "an unexpected, external, violent and sudden event," the plan administrator denied Mrs. Wickman's claim.

As a result, Mrs. Wickman brought a suit for benefits under ERISA. Acknowledging that there is no right to a jury trial in an action for benefits under ERISA, the parties consented to a trial before a magistrate judge. The magistrate

judge performed a de novo review of the facts[8] and concluded that Mr. Wickman's death was not accidental because he "knew or should have known that serious bodily injury or death was a probable consequence substantially likely to occur as a result of his volitional act of placing himself outside of the guardrail and hanging on with one hand." *Wickman*, 908 F.2d at 1081. Mrs. Wickman appealed the magistrate judge's ruling.

According to the Court's opinion in the present case, "the *Wickman* test" is a definition of accident that excludes injuries that a reasonable person would have viewed as highly likely to occur. *See supra* at 3. To consider this to be "the *Wickman* test" misreads the First Circuit's task in *Wickman*. The focus of *Wickman* was not to formulate a generally applicable definition of accident; the term was already defined in the insurance policy, and the court even noted that the "[c]ase law is fairly consistent in defining an accident, using equally ambiguous terms . . . ." *Wickman*, 908 F.2d at 1087. Rather, the central issue in *Wickman* was whether the magistrate judge erroneously applied the policy's definition of accident–an unexpected event–to the particular facts surrounding Mr. Wickman's fall from the bridge. *Id.* at 1088-89.

Faced with the task of resolving this issue, the First Circuit sought to give "substance to a concept which is largely intuitive." *Id.* at 1087. The *Wickman* court

---

[8]As the Court explains in its opinion, in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that where, as in this case, an ERISA plan gives the plan administrator discretionary authority to decide eligibility questions or to construe the terms of the plan, the administrator's claim decision is reviewed for an abuse of discretion. The *Wickman* court does not explain why de novo review applied in that case, but the answer can be gleaned from the date of the *Wickman* decision. Although the First Circuit ultimately decided *Wickman* in 1990, just one year after *Firestone*, Mr. Wickman died in 1984, the plan administrator decided Mrs. Wickman's claim prior to *Firestone*, and the policy that applied to Mrs. Wickman's claim most likely did not contain the requisite language for deferential review under *Firestone*.

rejected the parties' invitation to analyze the issue in terms of "what level of expectation is necessary for an act to constitute an accident; whether an intentional act proximately resulting in injury or only the ultimate injury itself must be accidental." *Id.* at 1085-86. Instead, the *Wickman* court concluded that the proper starting point in determining whether an injury constitutes an accident under the terms of an insurance policy should be the "reasonable expectations of the insured when the policy was purchased." *Id.* at 1088. Noting that "[g]enerally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations and misjudgments," the First Circuit proffered a test to use in analyzing accident claims that aims to "prevent unrealistic expectations from undermining the purpose of accident insurance." *Id.*

The proffered test has two prongs. First, "[i]f the fact-finder determines that the insured did not expect an injury similar in type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were reasonable." *Id.* at 1088. Next, if the fact-finder finds the evidence insufficient to accurately determine the insured's subjective expectations, "the fact-finder should then engage in an objective analysis of the insured's expectations." *Id.* The *Wickman* court stated that in conducting such an analysis, "one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct." *Id.* "An objective analysis . . . serves as a good proxy for actual expectation." *Id.*

In my view, the *Wickman* test is an analysis that gives "substance" to a fact-finder's application of the definition of accident by focusing on the reasonable expectations of the insured. Although the *Wickman* court used the phrase "highly likely to occur," when viewed in the context of the entire opinion, it is apparent that the court's emphasis was not on the *degree* of the insured's expectations but on the *reasonableness* of the insured's expectations.

The *Wickman* court's focus on reasonableness is evident from its holding. The court upheld the magistrate judge's decision denying Mrs. Wickman's accidental-death claim, concluding that "the magistrate appropriately engaged in an objective analysis." *Id.* at 1089. The court reasoned that the magistrate judge's conclusion that Mr. Wickman should have known that death or injury was substantially likely to occur "*equates with* a determination . . . that a reasonable person in [Mr. Wickman's] shoes would have expected the result, and that any other expectation would be unreasonable." *Id.* (emphasis added). Furthermore, the First Circuit's own application of the objective analysis to Mrs. Wickman's claim is devoid of any discussion about whether a reasonable person in Mr. Wickman's shoes would have viewed death as "substantially" or "highly" likely to occur. *Id.* Rather, the *Wickman* court simply explained, "Objectively, he reasonably should have expected serious injury when he climbed over the guardrail and suspended himself high above the railroad tracks below by hanging on to the guardrail with only one hand." *Id.*

As I read *Wickman*, the First Circuit did not adopt a specific definition of accident. Hartford has recognized this subtlety. Before both the district court and this Court, Hartford has relied on the analytical framework of *Wickman* to support its argument that the plan administrator's *application* of its interpretation of the term "accidental" to the facts of Amber Lynn's claim was reasonable. In its brief to this Court, Hartford argued: "Appellant seems to argue that the *Wickman* test is chiefly relevant to determining whether Hartford reasonably defined plan terms. Hartford contends the *Wickman* framework is principally relevant to reviewing Hartford's evaluation of the facts." Brief of Appellee at 13. Specifically, Hartford argued: "[T]he evidence supports Hartford's determination that Mr. Schanus' expectations were manifestly unreasonable . . . ." *Id.* at 27-28. In addition, I do not believe Hartford has conceded that the "highly likely to occur" reference in *Wickman* should be the proper interpretation of the term "accidental" in the Hartford insurance policy. In fact, Hartford asked this Court to reject "a strained interpretation of the second

prong of the *Wickman* test (that is, whether a reasonable person would view the injury as 'highly likely to occur.')" Brief of Appellee at 30.

Based on the foregoing, I must respectfully disagree with the Court that Hartford has defended its denial of Amber Lynn's claim by invoking a *Wickman*-like "highly likely to occur" definition of "accidental." Therefore, I would proceed by reviewing the Hartford plan administrator's claim denial for an abuse of discretion, using the analytical framework provided by the case law of this Circuit. However, at this point I think it is necessary to explain that even if I agreed with the Court that Hartford "effectively concede[d]" the plan administrator used the wrong definition of "accidental" in denying Amber Lynn's claim, I would disagree that the proper course of action in such a situation is to return the claim to the plan administrator for reevaluation using "the *Wickman* standard that Hartford asserts should be applied" and considering evidence that was not before the plan administrator in the first instance. *See supra* at 17-18.

I believe the Court would be obliged to "ignore ERISA plan interpretations that did not actually furnish the basis for a plan administrator's benefits decision," *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998), and make an up or down call, based solely on the record that was before the plan administrator, on one simple issue: Whether the Hartford plan administrator abused its discretion in denying Amber Lynn's claim. This approach is consistent with the idea that ERISA claimants should not be "sandbagged by after-the-fact plan interpretations devised for purposes of litigation," *Marolt*, 146 F.3d at 620, and with "ERISA's purpose of streamlining and shortening the timeframe for disposing of claims," *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 396 (5th Cir. 1998). The Court's decision today undermines these important ERISA concepts.

Moreover, the Court's decision potentially allows an ERISA defendant to usurp the reviewing court's role in determining whether and how a plan administrator may

have abused its discretion in denying a claim for benefits. The rule adopted by the Court–"when an administrator abandons in litigation its original basis for denying benefits, the better course generally is to return the case to the administrator"–makes it possible for an ERISA defendant fearing defeat in litigation to return the proceedings to the plan administrator for another bite at the apple simply by abandoning its administrative position and advancing a new interpretation or reason during litigation.[9] *See supra* at 17.

---

[9]While a remand to the plan administrator in this case could work to the benefit of this claimant, the Court's holding today may well work to the detriment of future ERISA claimants. For example, consider the following scenario: An ERISA plan administrator denies a beneficiary's accidental-death benefit claim, reasoning that the insured, who crashed his motorcycle while driving with a blood-alcohol level nearly twice the legal limit, did not die from an "accidental bodily injury" under the terms of the policy because his death was "highly likely to occur." The claimant appeals the denial and submits statistical evidence that the number of people who die as a result of drunk driving is less than 1% of all individuals who are arrested for driving under the influence of alcohol. The plan administrator ignores the evidence and upholds the denial, using the "highly likely to occur" standard. The claimant files a suit for benefits under ERISA and files a motion for summary judgment. After reading the claimant's brief to the district court, the ERISA defendant concludes that the court will likely hold that the plan administrator abused its discretion in denying the claim. Under today's holding, the defendant may be able to avoid an adverse grant of summary judgment by the district court by abandoning the "highly likely to occur" standard used by the plan administrator and adopting a different standard, in the hope that the district court will remand to the plan administrator for a determination using the new standard. If the new standard is better designed to survive abuse of discretion review, the defendant can prevail in any ensuing litigation despite the fact that the plan administrator may have initially abused its discretion.

With regard to the Court's proviso that remand need not occur if an ERISA defendant changes its litigation position in an attempt to gain a tactical advantage, *see supra* at 18 n.4, I do not share the Court's confidence that a reviewing court will necessarily be able to divine the intent behind a litigation strategy that drifts away from the plan administrator's original position. Apparently, the Court has decided

The Court cites several cases in support of its decision not to engage in the normal abuse-of-discretion review of the Hartford plan administrator's denial of Amber Lynn's claim and, instead, to opt for the unusual course of remanding the claim to the plan administrator for reevaluation based on what the Court claims Hartford's attorney now says is the correct definition of "accidental." *See supra* at 17. However, I would submit that some of these cases actually lend support to the proposition that where, as here, the plan administrator has been given discretion to interpret plan terms and, in fact, has done so, it is the court's responsibility to review the administrator's interpretation for an abuse of discretion. *See, e.g., Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661-66 (6th Cir. 2004) (remanding claim to plan administrator for reconsideration in light of the court's opinion, *after* determining plan administrator's interpretation of plan term was arbitrary and capricious); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460-61 (9th Cir. 1996) (remanding case to plan administrator for a decision on the merits of the participant's claim consistent with the court's opinion, *after* determining plan administrator abused its discretion by misconstruing plan language); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072-74 (2d Cir. 1995) (remanding case to fiduciary *after* determining fiduciary acted arbitrarily and capriciously in denying plan benefits). If the reviewing court determines that there has been an abuse of discretion, then remand may be necessary to allow the plan administrator to reevaluate the claim in light of the court's opinion on how the administrator's decision was unreasonable. *Compare Jones, Saffle, and Miller, with Marolt*, 146 F.3d 620-21 (remand unnecessary where court ignored post hoc interpretation devised

---

that Hartford is gaining no tactical advantage in this case because Hartford has moved away from "its original, narrower interpretation" of accidental injury. *See id.* However, on remand, the Hartford plan administrator may not interpret or apply "*Wickman*'s more generous interpretation of accidental injury," *id.*, as generously as the Court expects. Regardless of the outcome on remand, the fact remains that "ERISA's purpose of streamlining and shortening the timeframe for disposing of claims," *see Schadler*, 147 F.3d at 396, has been unnecessarily frustrated in this case.

for litigation and determined plan administrator's legally erroneous claim denial was an abuse of discretion).

The other cases cited by the Court are distinguishable from the present case because they involve situations where remand was necessary because the plan administrator either did not give reasons for its decision or had not yet interpreted the plan; thus, it was the plan administrator's role to develop the administrative record and decide the claim in the first instance, not the court's. *See, e.g., Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 644 (8th Cir. 2002) (remanding case to plan administrator for a decision on the merits of the participant's claim after determining plan administrator abused its discretion by abdicating its duty under the terms of the plan to make disability determinations); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288-90 (10th Cir. 2002) (remanding "any occupation" disability claim to claims administrator because denial letter failed to specify a reason for the decision); *Schadler*, 147 F.3d at 397-98 (remanding claim to plan administrator because in the unique circumstances of the case, "the administrator never had occasion to exercise any discretion to interpret the terms of the Plan"); *Gallo v. Amoco Corp.*, 102 F.3d 918, 922-23 (7th Cir. 1996) (noting that if, hypothetically, there were some requirement that an ERISA claim denial contain a "reasoned elaboration of its basis" and the administrator fails to give "the reasoning behind the reasons," the court would not decide the plaintiff's benefits claim but instead would remand the claim to the plan administrator for further explanation).

Because I do not think Hartford advanced a *Wickman*-like "highly likely to occur" definition of "accidental," and because I would ignore any post hoc rationales even if I agreed with the Court that Hartford advanced a different definition during litigation, I now turn to what I believe is the only issue in this case: Whether the Hartford plan administrator abused its discretion in denying Amber Lynn's claim.

As the Court explains, because the Hartford policy gives the plan administrator the discretionary authority to decide eligibility questions or to construe the terms of the policy, the administrator's denial of Amber Lynn's claim is reviewed for an abuse of discretion. *Firestone*, 489 U.S. at 115. The abuse-of-discretion standard of review is a "deferential standard [which] reflects our general hesitancy to interfere with the administration of a benefits plan." *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998). "Under this standard, an administrator's decision to deny benefits will stand if reasonable." *Farley v. Ark. Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998).

In this Circuit, two tests are relevant in analyzing whether the Hartford plan administrator's denial of Amber Lynn's claim was reasonable. First, in determining whether the plan administrator's interpretation of the term "accidental" was reasonable, the five-factor test set forth in *Finley v. Special Agents Mutual Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992), is applied.[10] Next, in determining whether the plan administrator reasonably applied its interpretation of the term "accidental" to the facts of Amber Lynn's claim, the test is whether the decision is "adequately supported by the evidence on record." *Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996). In other words, if the plan administrator "offer[s] a reasoned explanation, based on the evidence, for a particular outcome," the decision must not be disturbed, even though a different reasonable decision could have been

---

[10]The five factors to be considered are: (1) whether the Hartford plan administrator's interpretation is consistent with the goals of the policy; (2) whether the interpretation renders any language in the policy meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the Hartford plan administrator has interpreted the word "accidental" consistently; and (5) whether the interpretation is contrary to the clear language of the policy. *See Finley*, 957 F.2d at 621. "These factors present discrete questions; they need not be examined in any particular order." *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997).

made. *Id.* at 899 (quotation omitted); *see also Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997).

Given the deferential standard of review governing this case and applying the two relevant tests, I cannot say that the Hartford plan administrator reached an unreasonable decision. Consequently, I would affirm the decision of the district court.

The Hartford plan administrator's interpretation of the word "accidental" was reasonable under the *Finley* five-factor test.[11] I think it is necessary first to explain that, in my view, the administrator has interpreted the word "accidental" consistently. There is no evidence that the plan administrator somehow deviated from a standard definition of "accidental" applied in the past, *see Cash*, 107 F.3d at 644 n.7, but the Court seems to express some concern over whether the plan administrator consistently interpreted the word "accidental" from the first denial letter to the second denial letter. *See supra* at 11. The initial denial letter defines "accidental" in terms of being "unexpected," and the second denial letter defines "accidental" in terms of being "unforeseen." At this juncture, it is appropriate to look to the dictionary to give

[11]The Hartford insurance policy provided that Hartford will pay an accidental-death benefit if the employee participant's death results directly from an "accidental bodily injury." However, the policy did not define "accidental." As a result, the plan administrator consulted Black's Law Dictionary which defined "accidental" as: "Happening by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous." In its initial claim denial letter dated December 26, 2000, the plan administrator denied Amber Lynn's claim, reasoning: "Given [Mr. Schanus's] blood alcohol level, his bodily injury can in no way be considered unexpected, happening by chance or fortuitous. On the contrary, it could be expected that if he drove his vehicle in such a reckless manner and in an intoxicated condition, serious bodily injury could result." Amber Lynn appealed the denial, and on June 14, 2001, the plan administrator upheld the denial, explaining: "[A] reasonable person would have known that death or serious injury was a reasonably foreseeable result of driving while intoxicated."

the words "unexpected" and "unforeseen" their ordinary meanings. *See Cash*, 107 F.3d at 643-44 (noting that it was necessary and reasonable for the Court to use the dictionary to define terms within an ERISA plan's definition of "pre-existing condition" in determining whether administrator's claim denial was reasonable). *Merriam-Webster's Collegiate Dictionary* defines "unexpected" as "not expected : UNFORESEEN." *Merriam-Webster's Collegiate Dictionary* 1286 (10th ed. 2002). It also defines "expect" as "to anticipate;" "foreseeable" as "being such as may be reasonably anticipated;" and "anticipate" as "to look forward to as certain : EXPECT." *Id.* at 407, 456, 50. And finally, it notes that "foresee" is a synonym for "anticipate." *Id.* at 50. Based on these dictionary definitions, I would conclude that the Hartford plan administrator's interpretation of the word "accidental" was consistent because the words "unexpected" and "unforeseen" are synonymous.

Next, the Hartford plan administrator's interpretation of the word "accidental" to mean "unexpected" or "unforeseen" is not contrary to the clear language of the policy. This *Finley* factor is satisfied where the plan administrator has given the words of the plan their ordinary meaning. *Hutchins*, 110 F.3d at 1344. "Ordinary meaning is determined by the dictionary definition of the word and the context in which it is used." *Id.* ("Under an abuse of discretion standard we do not search for the best or preferable interpretation of a plan term: it is sufficient if the [administrator's] interpretation is consistent with a commonly accepted definition."). The Hartford plan administrator gave ordinary meaning to the word "accidental" by consulting Black's Law Dictionary, by interpreting the word to mean "unexpected," and by expounding upon the ordinary meaning of the word "unexpected" in the second denial letter. The Hartford plan administrator's interpretation of the word "accidental" to mean "unexpected" or "unforeseen" is consistent with commonly accepted definitions and, therefore, is not contrary to the clear language of the policy.

Third, relying on the Seventh Circuit's decision *Cozzie v. Metropolitan Life Insurance Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998), the plan administrator's

interpretation of the word "accidental" to mean "unexpected" or "unforeseen" is consistent with the goals of the Hartford accidental-death policy. The facts and issue in *Cozzie* are almost identical to the present case. In *Cozzie*, MetLife denied a beneficiary's claim for accidental-death benefits under an ERISA-governed plan on the basis that the employee participant's death did not result from an accident when he crashed his car while driving with a blood-alcohol level of more than twice the legal limit. MetLife defined "accident" in terms of reasonable foreseeability. The Seventh Circuit concluded that MetLife's interpretation was rational because it was consistent with the goals of the accidental-death plan. *Id.* The court explained:

> The purpose of this plan is to provide the families . . . with insurance against the tragedy of unexpected death by providing additional benefits for those who experience such a loss and all its consequent tremors. Whenever a plan fiduciary determines that benefits are not owed under particular circumstances, it does, from the perspective of the claimants in that case, frustrate the purpose of providing assistance. However, as with all insurance arrangements, the plan fiduciary or administrator must ensure that payments are reserved for those who truly fall within the terms of the policy. Otherwise, the financial health of the pooled assets is jeopardized and the cost of providing recovery for future applicants owed assistance is escalated. We cannot say, therefore, that MetLife's determination that the purposes of the plan are best served by acknowledging a qualitative difference between the ingestion of a huge quantity of alcohol and other tragedies of human life which do not involve such a significant assumption of a known risk by the insured is incompatible with the goals of the plan.

*Id. See also Finley*, 957 F.2d at 621 (concluding that the administrator's interpretation of a term in an accidental-death-and-dismemberment plan was in accord with the goal of providing additional benefits in certain circumstances).

Next, the Hartford plan administrator's interpretation of "accidental" does not render any language in the policy meaningless or internally inconsistent. Appellant

argues that the interpretation of "accidental" to mean "unexpected" or "unforeseen" renders meaningless the policy's "express exclusion" of death by suicide, attempted suicide or intentionally self-inflicted injury, because under such an interpretation, the definition would "already exclude[] any foreseeable risk of injury or death that is the consequence of an intentional act." Appellant's Brief at 30. Even though the Plan sets forth a list of "types of injuries [that] are excluded from coverage," the list is not really a list of exclusions.[12] Rather, it is more akin to an illustrative list of non-accidents. Each of the items listed in the Hartford policy would not qualify as an accident under the interpretation afforded to that term by the plan administrator.[13] Hartford's interpretation of the term "accidental" does not render the list of items meaningless; the list is a clarification of the general rule of coverage.

Lastly, the Hartford plan administrator's interpretation of "accidental" does not conflict with the substantive or procedural requirements of the ERISA statute.

---

[12]In an employee benefit plan, an exclusion is a benefit that meets the rule of coverage under the plan (e.g., meets the definition of "accident"), but nonetheless is not covered under the terms of the plan.

[13]The policy provides:

**What types of injuries are excluded from coverage?**
No benefit will be paid for a loss caused or contributed to by:
(1) sickness; or
(2) disease; or
(3) any medical treatment for items (1) or (2); or
(4) any infection, except a pus-forming infection of an accidental cut or wound; or
(5) war or any act of war, whether war is declared or not; or
(6) any intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane; or
(7) taking drugs, sedatives, narcotics, barbiturates, amphetamines or hallucinogens unless prescribed for or administered to you by a licensed physician.

Nowhere in ERISA is a plan required to use a specific definition of "accident." It may be true that a body of common law has developed regarding the definition of "accident" in an ERISA employee benefit plan; courts have had to devise and apply their own interpretations of the term "accident" when conducting de novo review of a plan administrator's decision where the plan did not give the administrator the discretionary authority to interpret the terms of the plan. *See, e.g., Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456 (7th Cir. 1997); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448 (5th Cir. 1995); *McElyea v. AIG Life Ins. Co.*, 326 F. Supp. 2d 960 (E.D. Ark. 2004); *Ablow v. Canada Life Assurance Co.*, No. 3:02-CV-300, 2003 WL 23325805 (D. Conn. Nov. 19, 2003). However, in a case such as this where the plan administrator has been given the authority to interpret the terms of the plan and in fact has done so, it would be improper for a reviewing court to look to the common law and impose upon the plan administrator an interpretation of "accident" that the court thinks should have been applied. "To do so would be to ignore the appropriate deferential standard of review and impose an improper de novo review." *See Cash*, 107 F.3d at 641 (noting that in an ERISA abuse-of-discretion case, "[i]n making its evaluation, the court does not substitute its own weighing of evidence for that of the [plan administrator]").

Having concluded that the Hartford plan administrator's interpretation of "accidental" to mean "unexpected" or "unforeseen" is reasonable under the *Finley* five-factor test, I now turn to the issue of whether the plan administrator reasonably applied its interpretation to the facts of Amber Lynn's claim. I conclude that it did.

The plan administrator gave a "reasoned explanation, based on the evidence," for denying Amber Lynn's claim. *See Donaho*, 74 F.3d at 899. In its final denial letter dated June 14, 2001, the plan administrator explained: "[A] reasonable person would have known that death or serious injury was a reasonably foreseeable result of driving while intoxicated." As in *Wickman*, the Hartford plan administrator gave "substance to a concept which is largely intuitive," *Wickman*, 908 F.2d at 1087, by

focusing on the reasonable expectations of a hypothetical person in Mr. Schanus's shoes. Appellant even admits this in her brief to the Court: "Hartford turned immediately to the question of whether Schanus's expectation was 'reasonable' from an objective perspective, i.e. whether '*a reasonable person*' would have known or appreciated the consequences of Schanus's intentional act of intoxication." Brief of Appellant at 25.

Appellant argues that Mr. Schanus's "expectation of reaching home . . .was not patently unreasonable since most people who drive after drinking (even with a 0.19 BAC) are not injured or killed on the highway." Brief of Appellant at 41. For example, she explains that evidence she submitted to the district court "demonstrates that the number of people who died as a result of drunk driving is less than 1% of all individuals who are *arrested* for driving under the influence of alcohol." Brief of Appellant at 35.[14] However, Appellant forgets that such evidence was not before the Hartford plan administrator. Based on the record before it, the plan administrator reasonably evaluated the facts from the perspective of an average driver, and not from the perspective of an expert well-versed in crime and highway-safety statistics. Therefore, relevant to the plan administrator's analysis was the fact that "[t]he hazards of driving while intoxicated are well-known. The public is reminded daily of the risks of driving while intoxicated both in warnings from the media and in motor vehicle and criminal laws." *Walker v. Metro. Life Ins. Co.*, 24 F. Supp. 2d 775, 781 (E.D. Mich.

[14]It is interesting to note that the same evidence submitted by Appellant also indicates that "[t]here were 16,653 alcohol-related fatalities in 2000–40 percent of the total traffic fatalities for the year. . . . The 16,653 fatalities in alcohol-related crashes during 2000 represent an average of one alcohol-related fatality every 32 minutes."

1997).[15] The Hartford plan administrator reasonably applied its interpretation of "accidental" to the facts of Amber Lynn's claim.

In sum, I would conclude that the Hartford plan administrator did not abuse its discretion. The administrator reasonably interpreted and applied the terms of the policy to the facts of Amber Lynn's claim for accidental-death benefits. Given the deferential standard of review, the administrator's decision to deny benefits must not be disturbed even if a different reasonable decision could have been made. Therefore, I would affirm the judgment of the district court.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans

---

[15] *See also Nelson v. Sun Life Assurance Co. of Canada*, 962 F. Supp. 1010, 1012 (W.D. Mich. 1997) ("All drivers know, or should know, the dire consequences of drunk driving. Thus, the fatal result that occurred in this case should surprise no reasonable person."); *Schultz v. Metro. Life Ins. Co.*, 994 F. Supp. 1419, 1422 (M.D. Fla. 1997) ("The horrors associated with drinking and driving are highly publicized and well known to the public."); *Fowler v. Metro. Life Ins. Co.*, 938 F. Supp. 476, 480 (W.D. Tenn. 1996) ("[T]he hazards of drinking and driving are widely known and widely publicized.").